UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                  Case No. 8:15-CR-303-T-17AEP

EMILIANO FABRICIO PALMA-MEZA
_____/

# SENTENCING MEMORANDUM

## I.  Legal Framework for Sentencing Analysis

It is now well established that sentencing requires a two-step process. First, the district court must correctly calculate the sentencing guideline range. Second, the district court must consider the factors outlined in 18 U.S.C. §3553(a) to determine a reasonable sentence as to each defendant in each case.

In United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005), the Eleventh Circuit enumerated the ten factors used to determine a reasonable sentence: (1) the nature and circumstances of the offense and the defendant's personal history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide a just punishment; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with appropriate educational training, vocational training, or medical care; (6) types of sentences

1

available; (7) the correctly-calculated sentence range under the Sentencing Guidelines; (8) pertinent policy statements of the U.S. Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

## II.   Analysis of 18 U.S.C. § 3553(a) Factors

### A. History and Characteristics of the Defendant

Emiliano Palma-Meza is a 28-year-old citizen of Ecuador.[1]  He was the ninth of eleven children, and suffered austere poverty as a child.[2]  Two of his siblings died before he was born – one from drowning and one from a tetanus infection.[3]

Prior to his arrest in this case, Mr. Palma-Meza resided with his common law wife and their 3-year-old daughter in Manta, Ecuador.[4]  To support himself and his family, he worked as a cook on a fishing vessel.  He has done a variety of types of work during his life – including painting, plumbing, electrical work, and carpentry.[5]

On April 16, 2016 an earthquake struck Ecuador, inflicting devastation upon the city of Manta and its surrounding areas.[6]  The 7.8 magnitude quake

---

[1] PSR, page 3
[2] PSR, page 8
[3] PSR, page 9
[4] PSR, page 9
[5] PSR, page 10
[6] *Ecuador Earthquake*; CNN News website; April 17, 2016

2

caused buildings to collapse and killed more than 650 people.[7]  When the earthquake began Mr. Palma-Meza's wife and daughter were able to run out of the home before the structure collapsed.[8]  As of May 8, 2016, Mr. Palma-Meza's wife and daughter were still living in a public park.[9]  Unfortunately, the home is now uninhabitable.[10]  Sadly, Mr. Palma-Meza's father and mother, age 85 and 78 respectively,[11] also lost their home as a result of the earthquake.[12]

### B. The Correctly-Calculated Sentence Range Under The Sentencing Guidelines

The PSR calculates Mr. Palma-Meza's advisory guideline range to be an offense level 33, Criminal History I.[13]  This Guideline range carries a recommended sentence of 135 to 168 months imprisonment.[14]  Counts one and two carry a minimum mandatory of ten years imprisonment with a maximum of life imprisonment.[15]

---

[7] *Death Toll in Ecuador Earthquake Passes 650*; Aljazeera News website; April 24, 2016
[8] April 26, 2016 email from Mr. Palma-Meza's common law wife, Shirley Saltos Cedeno, to Defense Counsel.
[9] May 8, 2016 email from Mr. Palma-Meza's common law wife, Shirley Saltos Cedeno, to Defense Counsel.
[10] See Exhibits #1A and #1B - Photos of Mr. Palma-Meza's Home Subsequent to the April 16, 2016 Earthquake.
[11] PSR, page 8
[12] May 8, 2016 email from Mr. Palma-Meza's common law wife, Shirley Saltos Cedeno, to Defense Counsel.
[13] PSR, page 13
[14] PSR, page 13
[15] 21 U.S.C. § 960(b)(1)(B)

The Presentence Investigation Report does not give Mr. Palma-Meza any reduction for his role in the offense. The Defense objects to not receiving, pursuant to U.S.S.G. §3B1.2(b), a 2-level minor role reduction and a corresponding 4-level reduction in his base offense level, pursuant to U.S.S.G. §2D1.1(a)(5)(iii).

**1. The November 1, 2015 Sentencing Amendment to §3B1.2**

As noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id*.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id.*

Specifically, the Commission's November 1, 2015, factors direct a sentencing court to consider:

    (i)    the degree to which the defendant understood the scope and structure of the criminal activity;

    (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

    (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

    (iv)    the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

    (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, App. N. (3)(C)

Additionally, the amendment further provides that:

> [A] defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

Also, Application Note 3A explains that U.S.S.G. §3B1.2 provides a

range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.

### 2. Mr. Palma-Meza Was Substantially Less Culpable Than The Average Participant In The Criminal Activity

Mr. Palma-Meza qualifies for a minor role reduction because he was substantially less culpable than the average participant in the criminal activity to which he pleaded guilty. There were three persons seized aboard the go-fast on which Mr. Palma-Meza was seized.[16] Jonathan Israel Mero-Mero was the master of the go-fast.[17] As the master, or captain of the vessel, Mr. Mero-Mero was the person in charge of navigating the vessel to its destination and directing the crewmembers to accomplish that end. Mr. Sherwin Harlan Ebanks was the "load guard" of the go-fast.[18] A "load guard" is a representative of the party receiving the cocaine shipment; the load guard's duty is to travel with the cocaine from its maritime point of departure to its maritime point of arrival and ensure that none of the cocaine is lost or stolen.[19] Mr. Palma-Meza's role aboard the go-fast was that of a

---

[16] PSR, page 5
[17] At sentencing, the Government and the Defense will stipulate that Jonathan Israel Mero-Mero was the master of the go-fast.
[18] At sentencing, the Government and the Defense will stipulate that Mr. Sherwin Harlan Ebanks was the load guard of the go-fast.
[19] At sentencing, the Government and the Defense will stipulate as to this description concerning the duties of a "load guard" aboard a go-fast vessel transporting cocaine.

mariner. The common duties of a mariner include taking a turn driving the go-fast while the captain rests, and changing the fuel lines which run from the fuel barrels to the go-fast's engines.[20] Consequently, Mr. Palma-Meza, was less culpable than the other two defendants. Specifically, he was less culpable than the captain, as the captain determined the route of the vessel and supervised Mr. Palma-Meza during the voyage. Mr. Palma-Meza was also less culpable that the "load guard" as this individual was certainly a highly trusted member of the inner circle of the cocaine traffickers – evidenced by the fact that the traffickers entrusted him to guard over 17.5 million dollars worth of cocaine.[21] Additionally, Mr. Palma-Meza was less culpable than the individuals that organized the transportation of the cocaine, and he is less culpable than the buyers and the sellers of the cocaine.

> **3. An Analysis of the Factors Listed in U.S.S.G. §3B1.2, App. N. (3)(C) Shows That Mr. Palma-Meza Is Entitled to Minor Role**

In analyzing the clarifying, non-exhaustive list of factors in U.S.S.G. §3B1.2, App. N. (3)(C), every factor supports Mr. Palma-Meza's receiving a mitigating role reduction. As a simple courier or transporter of drugs:

    (i)    Mr. Palma-Meza had little or no degree of understanding of the

---

[20] At sentencing, the Government and the Defense will stipulate as to this description concerning the common duties of a mariner aboard a go-fast vessel transporting cocaine.

[21] According to page 5 of the PSR, there were 480 kilograms recovered from the go-fast. At sentencing, the Government and the Defense will stipulate that the street value of one kilogram of cocaine in the United States is $36,000. Therefore, the total United States street value of the cocaine recovered from the go-fast was approximately $17,760,000.

8

scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

(ii) Mr. Palma-Meza had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

(iii) Mr. Palma-Meza had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others, including direct orders from the captain of the go-fast vessel and the "load guard."

(iv) The nature and extent of Mr. Palma-Meza's activity and participation was limited to his assistance with the transportation of packages of cocaine on the sea; he had no responsibility or discretion in performing these transportation functions, and at all times during the transportation, he took direct orders from the captain of the vessel.

(v) Historically, cocaine trafficking organizations pay mariners anywhere from $3,000 to $15,000 depending on the

9

organization and the quantity of cocaine.[22] As stated, supra, the approximate United States street value of the cocaine recovered in this case was $17,760,000. Consequently, in the case at bar, a typical mariner's pay is represents an extremely tiny fraction of the value of the cocaine.[23]

(vi) Mr. Palma-Meza had absolutely no proprietary interest in the criminal activity; he was simply being paid to assist in the transportation of the cocaine.

### 4. An Analysis of U.S.S.G. §3B1.2, App. N. (3)(A) Supports the Contention That Mr. Palma-Meza Is Entitled to Minor Role

The fact that Mr. Palma-Meza is only being held responsible for the amount of cocaine that he helped to transport does not preclude a minor role adjustment.

As noted in the Commission's clarifying November 2015, amendment:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant

---

[22] At sentencing, the Government and the Defense will stipulate that historically, cocaine trafficking organizations pay mariners anywhere from $3,000 to $15,000 depending on the organization and the quantity of cocaine.

[23] $3,000 is equal to .016% of $17,760,000; $15,000 is equal to .084% of $17,760,000.

10

>personally transported or stored may receive an adjustment under this guideline.

U.S.S.G. §3B1.2, App. N. (3)(A)

### 5. The 2015 Amendments to United States Sentencing Guidelines have Abrogated Rodriguez De Varon

The Eleventh Circuit opinion in <u>United States v. Rodriguez De Varon</u>, 175 F.3d 930 (11th Cir. 1999) should no longer be used by this Court to preclude mariners aboard go-fast vessels from eligibility for a mitigating role reduction, as the legislative history of the November 1, 2015 amendment to the mitigating role provision illustrates that the Sentencing Commission abrogated the reasoning in <u>Rodriguez De Varon</u>. *See* generally U.S.S.G. Appendix C, Amend. 794. Specifically, the Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.

U.S.S.G. Appendix C, Amend. 794

The Commission's §3B1.2 clarifying amendment was created in hopes of fostering a greater application of the mitigating role reduction for defendants, such as Mr. Palma-Meza, who perform low-level functions, such as "mules" and "couriers," for large drug trafficking organizations.

As noted in the legislative history of the amendment, it was the specific

11

intent of the Commission by way of the Amendment to address the Commission's observation "that courts often deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id*. The Eleventh Circuit opinion in <u>United States v. Rodriguez De Varon</u>, 175 F.3d 930 (11th Cir. 1999), although not specifically named by the Sentencing Commission, is one such case that has justified the denial of a mitigating role reduction where the evidence supports a finding that the defendant was "integral" or played an "important" or "essential" role in the transportation of the drugs he or she transported. <u>Rodriguez De Varon</u>, at 943. For this Court to continue to follow the flawed reasoning in the <u>Rodriguez De Varon</u> opinion would be contrary to the intent of the Sentencing Commission and Congress and would defeat the clear intent of the Sentencing Commission to increase the rate of mitigating role reductions for otherwise-qualified defendants.

In the eyes of the Sentencing Commission, the <u>Rodriguez De Varon</u> opinion has been inappropriately focusing on whether the courier or transporter of drugs was important or essential to the importation offense in determining whether to apply a mitigating role reduction. It is the Commission's clear intent that a sentencing court not focus on whether the task performed was "integral" or "essential," but, instead, to focus on the

task the defendant performed in relationship to the larger conspiracy in which they were involved. This fact is clearly evidenced by the fact that the application notes now provide that "a defendant who does not have a proprietary interest in the criminal activity and who is simply paid to perform tasks should be considered for an adjustment under this guideline. See U.S.S.G. §3B1.2, App. N. (3) (C).

In response to the Commission's concerns, the Sentencing Commission's amendment to the guidelines was specifically designed to address the flawed approach taken by Rodriguez De Varon and other courts. As noted in the legislative history of the mitigating role amendment:

> Next, the amendment addresses cases in which the defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense. [Citations Omitted] [T]he Amendment revises the commentary to emphasize that the "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.

U.S.S.G. Appendix C, Amend. 794.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in

13

determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id*. To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment. *Id*.

As evidenced by the enumerated factors created by the Commission, the Sentencing Commission is directing a sentencing court to examine the defendant's degree of understanding and participation in the larger drug trafficking conspiracy and not whether they were "essential" or "integral" to the crime for which they were being held responsible. Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.  The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id*.

As such, it is clear from the legislative history of the clarifying amendment to U.S.S.G. §2B1.2 that Rodriguez De Varon and similar cases

14

have been abrogated by the Sentencing Commission and by Congress, who passed the amendment. While the legislative history to the amendment does not specifically reference Rodriguez De Varon, it does specifically reference United States v. Skinner, 690 F.3d 772, 783-784 (6th Cir. 2012); United States v. Panaigua-Verdugo, 537 F.3d 722, 725 (7th Cir. 2008); United States v. Deans, 590 F.3d 907, 910 (8th Cir. 2010); and United States v. Carter, 971 F.2d 597, 600 (10th Cir. 1992) - all of which rely upon the same flawed reasoning as in Rodriguez De Varon that if a defendant plays an critical, integral, essential, important, or indispensable role in the criminal activity, they are ineligible for a mitigating role reduction. *See* U.S.S.G. Appendix C, Amend. 794. Clearly, this approach is no longer applicable and thus this Court should not look to the Rodriguez De Varon opinion but to the amended guideline and the factors enumerated by the Sentencing Commission for this Court's consideration.

Of further significance to the present case, in listing the factors this Court should consider when determining the applicability of a mitigating role reduction, the Commission did not reference the amount of drugs involved in the criminal activity. In contrast, in Rodriguez De Varon, the Eleventh Circuit relied heavily on the amount of drugs found in the courier's possession. As noted by the Court in Rodriguez De Varon, "because the

15

amount of drugs in a courier's possession –whether very large or very small – may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943.

In 1999, the Eleventh Circuit found support for the "quantity-of-drugs" factor by pointing to an example found within an Application Note to the then-1999 version of the §2B1.2 guideline. *Id*. However, subsequent to the issuance of the Rodriguez De Varon opinion, the illustrative example related to the quantity of drugs in the application note was deleted from the guidelines by the Sentencing Commission in the November 1, 2001, version of the guidelines. *See* Nov. 1, 2001 Guidelines App. Notes.

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct / The Need To Protect the Public

Mr. Palma-Meza is not a danger to reoffend. He is a simple, poor mariner who was seduced by the temptation of financial security for himself and his family. Mr. Palma-Meza has no prior criminal history.[24] The United States Sentencing Commission has noted that first time offenders such as Mr. Palma-Meza are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.[25]

---

[24] PSR, page 7
[25] *Recidivism and the First Offender*, United States Sentencing Commission, May 2004

Mr. Palma-Meza is well aware that when he agreed participate in this smuggling venture that he made the biggest mistake in his life. The results of that decision have been disastrous for him; he has been plucked from his native country, stripped of all that is familiar to him, and separated indefinitely from his family.

When the Bureau of Prisons does eventually release Mr. Palma-Meza, he will undoubtedly steer clear of any contact with drug shipments for the remainder of his life.

### III. Conclusion

The Defense respectfully requests this Court take all the forgoing factors into consideration when it imposes a sentence that is "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a).

EXHIBITS

Exhibit #1A              Photo #1 of Mr. Palma Meza's Destroyed Residence

Exhibit #1B              Photo #2 of Mr. Palma Meza's Destroyed Residence

Exhibit #2               Letter from Shirley Cedeno

Exhibit #3               Letter from Emma Meza-Intriago

Exhibit #4               Letter from Waulter Esperanza Palma

Exhibit #5               Letter from Esther Palma-Meza

**Certificate of Service**

I HEREBY CERTIFY that on May 11, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mr. Jim Preston, AUSA
Office of the United States Attorney
400 North Tampa Street, Suite 3200
Tampa. FL 33602

/s/ *David C. Hardy*
David C. Hardy, Attorney at Law
Florida Bar #689661
1710 N. 19th Street, Suite 215
Tampa, Florida 33605
Tel: (813) 990-9547
dch@thehardylawfirm.com